UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARSHALL B. TUCKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:14-cv-01698-TWP-MJD |
| | ) |
| EXPRESS SCRIPTS HOLDING, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendant Express Scripts Holding ("Express Scripts") ([Filing No. 46](#)). After working as a maintenance supervisor for Express Scripts for almost one and a half years, Plaintiff Marshall Tucker ("Tucker") initiated this lawsuit alleging wrongful termination based on race discrimination, retaliation for protected activity, and harassment. Express Scripts moved for summary judgment on the basis that Tucker cannot establish a *prima facie* case for any of his claims and that it had a legitimate non-discriminatory reason for his termination. For the following reasons, the Court **GRANTS** in part and **DENIES** in part Express Scripts' Motion for Summary Judgment.

**I.     BACKGROUND**

The following material facts are not necessarily objectively true; but, as required by Federal Rule of Civil Procedure 56, both the undisputed and disputed facts are presented in the light most favorable to Tucker as the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Express Scripts is the nation's leading full-service pharmacy benefit management company. It processes pharmaceutical claims through its network of automated fulfillment pharmacies. Express Scripts has about 30,000 employees across the country.

In April 2012, Express Scripts completed its acquisition of Medco Health Solutions, Inc. ("Medco"). Medco had operated automated fulfillment pharmacy and distribution centers in various locations across the country, including Whitestown, Indiana and Willingboro, New Jersey. Tucker (an African-American male), Curtis Whitcomb (a Caucasian male) ("Whitcomb"), Loren Murphy (a Caucasian male) ("Murphy"), Gerald Barksdale (an African-American/Asian male) ("Barksdale"), Va'Shound Taylor (an African-American male) ("Taylor"), and John Sands (a Caucasian male) ("Sands") were previously employed at Medco. After Express Scripts acquired Medco, these employees became employees of Express Scripts.

Tucker began his employment in September 2011, Murphy began his employment in July 2009, and Whitcomb began his employment in December 2008. Each worked at the Whitestown, Indiana facility. During Tucker's period of employment, Express Scripts had two work shifts, the first shift and the second shift. There were also two maintenance supervisors, one for the first shift and one for the second shift. Tucker and Murphy were employed as the maintenance supervisors. Murphy supervised the first shift, and Tucker supervised the second shift. In this capacity, they supervised electrical mechanical technicians ("EMTs") and control specialists. When needed, Tucker and Murphy also would assist the EMTs with trouble-shooting malfunctions in the production machinery. The production machinery consisted of all the equipment that handled bottling and packaging pills to be sent to customers, and was located throughout the production area.

The Whitestown facility also had approximately 1,000 machines that counted pills and filled them in bottles. These machines were referred to as the "counting cells." The counting cells were not located on the production floor. The counting cells were different machinery than the production machines, as they were smaller and less complicated than the production machinery on which the EMTs worked. The nearly 1,000 counting cells were maintained by ads coordinators. These ads coordinators were supervised by the counting cells supervisor. Whitcomb worked as the counting cells supervisor during the first shift. There was no counting cells supervisor during the second shift.

After Express Scripts completed its acquisition of Medco, Express Scripts reviewed the labor forces in all of its automated fulfillment pharmacies. At its legacy facilities, Express Scripts employed two maintenance supervisors for a two-shift operation. Medco had been employing two maintenance supervisors and a counting cells supervisor for a two-shift operation. Express Scripts had the goal of having the Medco facilities follow the staffing model of Express Scripts by early 2013.

To reach this goal, Express Scripts underwent a reduction in force ("RIF") and laid off more than 1,000 employees nationwide, including Tucker. Tucker was laid off on January 30, 2013. Express Scripts explains that the selection process for the RIF involved a skill assessment for each candidate and consideration of seniority and performance records. Express Scripts asserts that among the three supervisors—Tucker, Murphy, and Whitcomb—Tucker scored the lowest in the skill assessment, was the least senior, and was the only supervisor who had been counseled for poor performance. No one was hired to replace Tucker. Instead, Whitcomb's position of counting cells supervisor was eliminated, and Whitcomb became the second shift maintenance supervisor.

During his employment with Express Scripts, Tucker supervised Brian Somers ("Somers"), a non-supervisory maintenance employee. In November 2012, Somers informed Tucker that he was being called derogatory names such as puddin, prison bitch, and dirty jew, was touched on his side and crotch area, and heard Tucker referred to as a nigger by Michael Nakabayashi ("Nakabayashi"), a co-employee. Tucker told Somers that this conduct was wrong, a violation of work policy, and should be stopped. Tucker told Somers that Somers had to report the conduct to the human resources department, and Tucker escorted Somers to the department to report the conduct. Somers reported to the director of human resources and to Taylor,[1] the director of engineering, that Tucker told him the conduct by Nakabayashi was wrong and had to be reported and that Tucker escorted him to human resources. Only a month or two after this conduct was reported by Somers, Tucker was terminated from his employment with Express Scripts. Barksdale, Taylor, and Sands made the decision to terminate Tucker. Tucker was the only employee at the Whitestown facility who was terminated as a result of the RIF.

Tucker asserts that his termination was not a result of the RIF and a low skill assessment, seniority, and poor performance. Rather, he asserts that he was terminated because of race discrimination and his protected activity in opposing discrimination and facilitating Somers' reporting of the discrimination and harassment.

Tucker filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), and on September 5, 2014, he received a right to sue letter from the EEOC. On October 17, 2014, he filed his Complaint against Express Scripts in this Court, alleging that Express Scripts had violated his rights as protected by Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"), and the Civil Rights Act of 1866 as

---

[1] Tucker's immediate supervisor was Gerald Barksdale. Barksdale's immediate supervisor was Va'Shound Taylor. Taylor's immediate supervisor was John Sands, who hired Tucker.

amended, 42 U.S.C. § 1981 ("Section 1981") (Filing No. 1). He asserted claims for race discrimination, retaliation, and harassment under Title VII and Section 1981. Express Scripts filed its Answer on January 16, 2015 (Filing No. 13). Tucker filed his Statement of Claims on October 1, 2015, in which he asserted claims for race discrimination and retaliation, and he abandoned his claim for harassment (Filing No. 40). Express Scripts' Motion for Summary Judgment promptly followed, in which Express Scripts requested judgment on all of Tucker's claims.

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

The Court views the designated evidence in the light most favorable to Tucker, as the non-moving party, and draws all reasonable inferences in his favor. *Bright v. CCA*, 2013 U.S. Dist. LEXIS 162264, at *8 (S.D. Ind. Nov. 14, 2013). "However, employment discrimination cases are extremely fact-intensive, and neither appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes." *Id.* at *8–9 (citation and quotation marks omitted).

### III.    DISCUSSION

Express Scripts requests summary judgment on Tucker's claims of race discrimination, retaliation, and harassment under Title VII and Section 1981 because Tucker cannot establish a *prima facie* case of discrimination, retaliation, or harassment, and Express Scripts' RIF was the legitimate, non-discriminatory reason for terminating Tucker's employment. The Court will address each claim in turn.

As an initial matter, the Court notes that Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Section 1981 provides similar protections: "All persons

within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981. "The substantive standards and methods of proof that apply to claims of racial discrimination and retaliation under Title VII also apply to claims under § 1981." *Smith v. Bray*, 681 F.3d 888, 896 (7th Cir. 2012). "[A]lthough section 1981 and Title VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical." *McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009) (citation omitted); *see also Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403 (7th Cir. 2007) ("we generally have applied the same prima facie requirements to discrimination claims brought under Title VII and section 1981"); *Alexander v. Wis. Dep't of Health & Family Servs.*, 263 F.3d 673, 681–82 (7th Cir. 2001) ("we analyze § 1981 and Title VII discrimination claims in the same manner").

### A. Claim of Race Discrimination

Express Scripts argues that summary judgment in its favor is warranted because the designated evidence shows that Tucker cannot establish a *prima facie* case of wrongful termination based on race discrimination.

A plaintiff may show race discrimination through a direct method or, as an alternative, indirectly through the burden-shifting mechanism established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Stewart v. Henderson*, 207 F.3d 374, 376 (7th Cir. 2000).

Under the direct method, a plaintiff may offer direct or circumstantial evidence to prove discrimination. Direct evidence "requires an admission of discriminatory intent." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 979 (7th Cir. 2014). A plaintiff may also prevail under the direct method by constructing a "convincing mosaic" of circumstantial evidence that "allows a jury to infer intentional discrimination by the decision maker." *Rhodes v. Ill. Dep't of Transp.*,

7

359 F.3d 498, 504 (7th Cir. 2004) (citation and quotation marks omitted). "That circumstantial evidence, however, must point directly to a discriminatory reason for the employer's action." *Id.* (citation and quotation marks omitted).

Alternatively, under the indirect method of proof, the plaintiff has the initial burden of establishing a *prima facie* case that the adverse employment action was impermissibly discriminatory. *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006). If the plaintiff satisfies this burden, then the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the adverse employment action. The burden then shifts back to the plaintiff to submit evidence that the employer's stated reason is pretextual. *Id.*

The plaintiff establishes a *prima facie* case of discrimination by presenting evidence that would allow a reasonable jury to find that: (1) he is a member of a protected class, (2) he performed reasonably on the job in accordance with his employer's legitimate expectations, (3) despite his reasonable performance, he was subjected to an adverse employment action, and (4) similarly situated employees outside of his protected class were treated more favorably by the employer. *Id.* In the RIF context, the fourth prong is modified, requiring a plaintiff to show that "her duties were absorbed by employees not in the protected class[]." *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 690 (7th Cir. 2006).

Express Scripts asserts that there is no evidence of "an admission of discriminatory intent" for Tucker's termination, and the circumstantial evidence offered does not construct a "convincing mosaic" that points directly to a discriminatory reason for the termination. Thus, Tucker cannot establish his race discrimination claim under the direct method of proof. Tucker responds that one category of circumstantial evidence—that being the employer's pretextual reason for an adverse employment action—supports his discrimination claim under the direct method of proof.

8

However, the Court determines that this evidence and argument is more appropriately analyzed under the indirect method of proof, and therefore, addresses it below.

Considering Tucker's discrimination claim under the indirect method of proof, the Court notes that there is no dispute regarding the first and third prongs of a *prima facie* case of discrimination: Tucker is a member of a protected class (African-American), and he suffered an adverse employment action (he was terminated).

Express Scripts argues that Tucker cannot establish a *prima facie* case of discrimination because he cannot prove the second element that he was meeting Express Scripts' legitimate expectations. They assert that Tucker was counseled for his failure to timely report machine downtime on two occasions even though this was an essential duty of his position. Express Scripts contends that Tucker was about to be placed on a performance improvement plan for various performance issues. Furthermore, Express Scripts asserts that in the RIF context, weak performance defeats the "meeting the employer's legitimate expectations" prong even if the employee's performance "could also be characterized as satisfactory or adequate," relying on *Merillat*, 470 F.3d at 694. However, *Merillat* did not stand for this proposition. Rather, weak performance was considered in the pretext analysis after a *prima facie* case was shown.

Express Scripts further argues that even if Tucker could establish a *prima facie* case of discrimination, his claim must fail because he cannot establish that Express Scripts' proffered legitimate, non-discriminatory reason for his termination—the RIF—was a pretext for discrimination.

Tucker responds to these arguments by pointing to evidence which shows he was meeting Express Scripts' legitimate employment expectations. He notes that he was hired as the maintenance supervisor for the second shift in September 2011, and his supervisor was Lee Baker.

Baker gave Tucker his only annual performance evaluation while employed by Express Scripts. In January 2012, Tucker's performance evaluation rated him as "meeting expectations." (Filing No. 54-6 at 3.) This was for the period of January through December 2011. When Barksdale became Tucker's supervisor in July 2012, Baker gave positive feedback about Tucker to Barksdale (Filing No. 54-2 at 8). Tucker also asserts that he never received any formal discipline from Express Scripts.

Regarding Express Scripts' assertion that he had failed to timely report machine downtime on two occasions, Tucker explains that he received an email from Sands, the director of engineering, about a failure to report up the chain of command about the equipment failures. Tucker responded to Sands by explaining that he had timely reported the issue and that there was no clear policy for when and how to report equipment problems. Approximately two weeks later, Sands' subordinate, Taylor, met with the supervisors to discuss a new reporting policy.

Express Scripts explains that it was going to place Tucker on a performance improvement plan for various performance issues. They contend that a performance improvement plan was created in November 2012. Tucker responds to this argument and evidence by asserting that the contents of the performance improvement plan are simply not true. He asserts that the project assignment and meeting referred to in the plan were actually assigned to another employee, who did accomplish the assignment and reported on it in a November 2012 meeting. Moreover, the performance improvement plan was created around the same time that Tucker assisted Somers in reporting the discriminatory and harassing comments and conduct of Nakabayashi.

These factual disputes regarding whether Tucker was meeting Express Scripts' legitimate employment expectations must be viewed in the light most favorable to the non-moving party, Tucker, and the disputes must be resolved by the trier of fact, not in the summary judgment context.

Regarding the fourth element of the *prima facie* case of discrimination, that similarly situated employees were treated more favorably, Express Scripts explain that in the RIF context, the employee's duties were absorbed by employees not in the protected class. Express Scripts asserts that it employed two maintenance supervisors for a two-shift operation at its legacy facilities, and before its acquisition of Medco, Medco had been employing three maintenance supervisors for a two-shift operation. Express Scripts had the goal of using two maintenance supervisors for a two-shift operation by early 2013 and asserts that it simply eliminated the third maintenance supervisor position and terminated Tucker.

Tucker, on the other hand, designated evidence which establishes that his facility utilized a two maintenance supervisor, two-shift model, and he and Murphy were the two maintenance supervisors for the first and second shifts. Whitcomb was the counting cells supervisor, whose shift overlapped the first shift, Murphy's shift. Whitcomb was employed by Express Scripts as the counting cells supervisor from 2009 until January 2013. In January 2013, Whitcomb's position as the counting cells supervisor was eliminated ([Filing No. 54-4 at 7](Filing No. 54-4 at 7)). On January 30, 2013, Tucker was terminated from his position as the second shift maintenance supervisor. Whitcomb then replaced Tucker as the second shift maintenance supervisor in February 2013. Whitcomb is Caucasian. Tucker is African-American. Thus, Tucker argues, an employee outside of his protected class took over all of his duties after he was termination.

Again, these factual disputes must be viewed in the light most favorable to the non-moving party, Tucker, and the disputes make summary judgment on this element inappropriate. These disputes must be resolved by the trier of fact.

Because Tucker has shown factual disputes regarding a *prima facie* case of race discrimination, the Court turns to Express Scripts' proffered reason for the termination and pretext.

Express Scripts asserts that it terminated Tucker because of its nationwide RIF following acquisition of Medco. This is a legitimate, non-discriminatory reason for the termination.

When courts consider the issue of pretext, the Seventh Circuit has explained that a plaintiff can demonstrate pretext by showing that the defendant's proffered reason is unworthy of credence. *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 888–89 (7th Cir. 2001). The plaintiff may demonstrate that the defendant's reasons are unworthy of credence with evidence showing at least one of the following: (1) the defendant's explanation has no basis in fact, (2) the explanation was not the actual motivation for the termination, or (3) the explanation was insufficient to warrant the termination. *Id.*

Express Scripts explains that it terminated Tucker because it eliminated his position—the "third maintenance supervisor"—during the RIF. However, Tucker designated evidence showing that his position—the "second shift maintenance supervisor"—was not eliminated. Rather, the only position that was eliminated was the counting cells supervisor. Whitcomb, who was in the only job position that was eliminated at the facility, took over Tucker's position as the second shift maintenance supervisor after Tucker was terminated. Tucker asserts that Express Scripts' proffered reason for his termination has no basis in fact and is simply not true. This factual dispute must be decided by the fact finder.

Though a plaintiff has the burden of proof on the issue of pretext, at this stage, it is sufficient to merely cast doubt on the veracity of the employer's stated reason. *Stumpf v. Thomas and Skinner, Inc.*, 770 F.2d 93, 98 (7th Cir. 1985). Tucker has shown factual disputes regarding his race discrimination claim based on the evidence that has been designated by the parties. Further, he has sufficiently cast doubt on the veracity of Express Scripts' articulated reason for his

termination. Therefore, the Court **DENIES** summary judgment in favor of Express Scripts on Tucker's claim of race discrimination under Title VII and Section 1981.

B.   <u>**Claim of Retaliation**</u>

Next, Express Scripts argues that summary judgment should be granted on Tucker's retaliation claim because he did not engage in protected activity and there was no causal connection between a protected activity and his termination.

To establish a retaliation claim under the direct method, the plaintiff must show that: (1) he engaged in a statutorily protected activity, (2) he suffered an adverse employment action, and (3) there is a causal connection between the adverse action and the protected activity. *Coleman v. Donahoe*, 667 F.3d 835, 859 (7th Cir. 2012).

Utilizing the indirect method, the plaintiff must establish a *prima facie* case of retaliation. Then the employer must provide a legitimate, non-discriminatory reason for the adverse employment action. Then the plaintiff must submit evidence that the employer's stated reason is pretextual. *Stephens v. Erickson*, 569 F.3d 779, 786–87 (7th Cir. 2009). To establish a *prima facie* case of retaliation, the plaintiff must show that: (1) he engaged in a statutorily protected activity, (2) he suffered an adverse employment action, (3) he was performing his job satisfactorily, and (4) he was treated less favorably than a similarly situated employee who did not complain of discrimination or harassment. *Id.*

Under both the direct and indirect methods, the employee must show that he engaged in statutorily protected activity. Express Scripts argues that Tucker did not engage in protected activity, and thus, the retaliation claim fails under either method of proof.

Quoting from the Seventh Circuit's unpublished opinion in *Small v. WW Lodging, Inc.*, Express Scripts asserts that "a plaintiff must demonstrate that he engaged in activity statutorily

13

protected under Title VII . . . . Such activity consists of opposing or complaining about discrimination by the employer based on race, color, religion, gender, national origin, age, or disability." *Small v. WW Lodging, Inc.*, 106 Fed. Appx. 505, 508 (7th Cir. 2004) (citing 42 U.S.C. § 2000e-2(a)). "[B]y the terms of the statute . . . not every act by an employee in opposition to racial discrimination is protected. The opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual." *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir. 1997) (quoting with approval *Silver v. KCA, Inc.*, 586 F.2d 138, 141 (9th Cir. 1978)).

Express Scripts further argues that merely encouraging others to report discriminatory conduct is not a protected activity. Express Scripts points to *Thomas v. Grinder & Haizlip Construction*, 547 F. Supp. 2d 825, 827 (W.D. Tenn. 2007), where the plaintiff never reported the alleged racist comment to management, but rather, encouraged other employees to report the comment. There, the court determined that the plaintiff could not support his retaliation claim. *See also Bowden v. Kirkland & Ellis LLP*, 2010 U.S. Dist. LEXIS 91730, at *51–52 (N.D. Ill. Sept. 2, 2010) (providing spiritual guidance or friendship to a complaining co-worker is not protected activity; the plaintiff must actually assist or oppose). Finally, Express Scripts explains that "a superior cannot retaliate against an employee for a protected activity about which he has no knowledge." *Stephens*, 569 F.3d at 788.

Express Scripts explains Tucker's alleged protected activity as simply encouraging Somers to report Nakabayashi's derogatory comments to human resources, and asserts that this does not rise to the level of protected activity. Express Scripts asserts that management did not know that Tucker encouraged Somers to report the conduct. Moreover, Tucker did not personally report the conduct until after his termination was communicated to him during his exit interview. At that

point, his employment already was terminated, so his report of the offensive conduct could not serve as a retaliatory basis for the termination.

Tucker responds to Express Scripts' argument by explaining that his actions were more than just simple encouragement, and management was aware of his role in opposing the offensive conduct. He explains that, as a supervisor, he gave Somers direction that he must report Nakabayashi's derogatory comments to human resources and that he also walked Somers to the human resources department to make the report. Tucker also designates evidence that Somers informed management that Tucker directed him to make the report. Viewing the evidence in the light most favorable to Tucker as the non-moving party as the Court must do, the Court determines that management was aware of Tucker's involvement in assisting Somers to oppose Nakabayashi's derogatory comments and conduct.

However, because Nakabayashi was a non-supervisory co-worker of Somers (below the level of Tucker), Nakabayashi's derogatory comments and conduct are not discrimination or harassment by the employer. There must be an additional basis to attribute the conduct to Express Scripts in order for Tucker to engage in protected activity of opposing the employer's discrimination or harassment. *See Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 390 (7th Cir. 2010); *Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 639–40 (7th Cir. 2009); *Drake v. 3M*, 134 F.3d 878 (7th Cir. 1998). As the Seventh Circuit explained in *Drake*, "[t]he allegedly hostile environment directed towards [plaintiffs] was primarily due to the conduct of their co-workers. Of course, only employers can be liable under Title VII, and only those employers who are at least negligent in failing to prevent the hostile environment harassment of co-workers will be held liable." *Drake*, 134 F.3d at 885 n.4 (citations omitted).

Express Scripts designated evidence that indicates that once Nakabayashi's comments and conduct were reported, it undertook an investigation of the allegations and disciplined Nakabayashi, which ultimately led to his discharge (Filing No. 48-1 at 6).  Additionally, Somers, not Tucker, was the individual who personally reported the offensive conduct, and Express Scripts did not discharge, demote, or discipline Somers after his report.  *Id.*  Furthermore, Express Scripts had policies and procedures for preventing and reporting harassment and discrimination (Filing No. 48-10 at 17–18, 32).  Tucker does not refute these facts or present any evidence to contradict them.  Express Scripts responded appropriately to the complaint of discrimination and harassment by investigating and disciplining the offending employee.  Consequently, there is no basis for employer liability on the part of Express Scripts arising out of the report of Nakabayashi's derogatory comments and conduct.  Because there is no basis to attribute Nakabayashi's comments and conduct to Express Scripts, there was no employer discrimination or harassment to oppose.  Therefore, Tucker was not engaging in statutorily protected activity when he assisted Somers in opposing Nakabayashi's comments and conduct.

Under both the direct and indirect methods for proving retaliation, Tucker must show that he engaged in statutorily protected activity.  The designated evidence indicates that Tucker was not engaged in statutorily protected activity, accordingly, his claim for retaliation must fail.  The Court **GRANTS** summary judgment in favor of Express Scripts on Tucker's claim of retaliation.

**C.    Claim of Harassment**

Regarding Tucker's claim of harassment, Express Scripts explains that to prevail on a race-based harassment claim under Title VII or Section 1981, Tucker must prove four elements:  (1) the work environment was both subjectively and objectively offensive; (2) his race was the cause of the harassment; (3) the conduct was severe or pervasive; and (4) there was a basis for employer

16

liability. *Montgomery*, 626 F.3d at 390. Express Scripts asserts that Tucker cannot prove his harassment claim because he never personally heard the derogatory comments of which Somers complained, which defeats the first, second, and third elements of the claim. *See Thompson v. Mem'l Hosp. of Carbondale*, 625 F.3d 394, 401 (7th Cir. 2010) (derogatory comments outside the presence of plaintiff did not support element of "subjectively and objectively offensive work environment"); *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 645 (7th Cir. 2005) (same); *Mannie v. Potter*, 394 F.3d 977, 983 (7th Cir. 2005) (same).

Tucker failed to respond to Express Scripts' argument regarding his claim of harassment. Additionally, he abandoned his claim of harassment in his Statement of Claims when he asserted only his claims for race discrimination and retaliation (Filing No. 40).

Because the case law cited by Express Scripts supports its argument, and because Tucker did not respond to the argument and did not assert his harassment claim in his Statement of Claims, the Court **GRANTS** summary judgment in favor of Express Scripts on Tucker's claim of harassment.

## IV. CONCLUSION

For the foregoing reasons, Defendant Express Scripts Holding's Motion for Summary Judgment (Filing No. 46) is **GRANTED in part and DENIED in part**. Plaintiff Marshall Tucker's claims for retaliation and harassment are dismissed, and his claim for race discrimination remains pending for trial in this litigation.

**SO ORDERED.**

Date: 5/10/2016

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jia Li
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
jia.li@ogletreedeakins.com

Todd M. Nierman
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
todd.nierman@ogletreedeakins.com

Gregory A. Stowers
STOWERS & WEDDLE PC
gstowers@stowersandweddle.com